## SCHRAM v. HOUTTEMAN et al.

### No. 3456.

District Court, E. D. Michigan, S. D.

April 23, 1943.

Robert S. Marx and Orville J. Thill, both of Detroit, Mich., for plaintiff.

Victor H. DeBaeke, of Detroit, Mich., for defendants Houtteman et al.

Max Kahn, of Detroit, Mich., for defendants John Flood et al.

LEDERLE, District Judge.

1. Plaintiff, B. C. Schram, as receiver of the First National Bank—Detroit, an insolvent national banking association, is

engaged in the winding up of the affairs of that institution.

2. At the time of the closing of the First National Bank on February 11, 1933, it carried a commercial account in the name of the Boulevard Dairy, Inc., with a balance then due of $2,208.28. On November 22, 1933, a written claim covering this account was filed with plaintiff Receiver by the Boulevard Dairy, Inc., signed by J. T. Flood, its treasurer, which claim reads in part as follows: "That no indorsements or assignments of the same or any part thereof have been given, and that there is no set-off or other legal or equitable defense to said claim or any part thereof."

3. Subsequent to the bank closing on February 11, 1933, limited withdrawals were permitted, and two 5% cash withdrawals were made from this account, one on February 17, 1933, and one on March 19, 1933, upon checks of the depositor-corporation signed by T. B. Thompson, as president, countersigned by John T. Flood, as treasurer, and endorsed for cashing by T. B. Thompson. Three dividend checks upon this account were paid by plaintiff to the order of the depositor corporation, as follows: April 12, 1933—$662.48; November 25, 1933—$220.82; November 30, 1934—$441.65.

4. In May, 1941, after all but $662.50 of this account had been paid in the manner previously outlined, counsel for defendants John T. Flood, Thomas B. Thompson, Will Bursick, Patrick Lennon, Charlie Latchman and Joe Acou notified plaintiff-Receiver that they claimed an interest in the fund, and no further payments were thereafter made until plaintiff filed this interpleader suit to determine ownership of the account. Supporting such claims, on October 5, 1941, an affidavit signed by each of said defendants was filed with plaintiff-Receiver setting forth the advancement by them to the corporation upon closing of the bank of a sum equal to the impounded account, for the purpose of carrying on the corporation business, upon an express agreement between them and the corporation that each of the contributors was entitled to a share in the impounded fund proportionate to his contribution to the total advanced and that, "deponents and the depositor-corporation and all parties concerned have, at all times since the date of the above mentioned agreement, treated the impounded funds as the property of the deponents and not as assets of the depositor-corporation."

5. In the liquidation of this bank, the Receiver has set aside certain funds for the payment of interest, so that the account in question now amounts to $829.56.

6. It is admitted that on the date the bank closed the depositor-corporation was the sole owner of this account. In December, 1934, one Henry Latham, having acquired the stock of the said defendants, who constituted all the stockholders of the depositor-corporation, changed its name to Modern Creamery Company, Inc.

7. On December 13, 1935, a petition for reorganization of Modern Creamery Co., Inc. in accordance with the provisions of Section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207, was filed and approved by this court, and trustees appointed. On January 27, 1936, the trustees in bankruptcy were authorized to sell all of the assets of that estate to the H. & W. Creamery Corporation. This sale was fully consummated and payment made on November 16, 1936. On March 23, 1937, the H. & W. Creamery Corporation was dissolved in accordance with the laws of the State of Michigan, and the defendants, Emil Houtteman, Fred J. Warde and Patricia Cook claim the fund as sole stockholders of such dissolved corporation.

8. On behalf of defendants John T. Flood, Thomas B. Thompson, Will Bursick, Peter Rich, Patrick Lennon, Charlie Latchman and Joe Acou there was testimony that on February 13, 1933, they, being all of the then stockholders of the Boulevard Dairy Inc., and realizing that the corporation needed finances to continue its business and could not obtain cash from this account in the closed bank, offered to make cash contributions pro rata in accordance with their stock holdings, so that the total thus advanced would equal approximately the amount that was in the bank when it closed on February 11th, stated thus in their brief, "The stockholders came to the rescue of the corporation by providing the necessary funds, not only the amount in the impounded bank account but substantial additional funds"; that in accordance with this offer, these funds were contributed by the various stockholders, and deposited to the corporation's credit in a going bank; that this new account was used for the purpose of carrying on the business of the corporation; that when

they advanced the funds to the depositor-corporation in February, 1933, they did so with the expectation that when dividends on the frozen bank account were paid to the corporation the contributors would be reimbursed by the corporation, and that during the time they continued as stockholders the corporation paid each of them their pro rata share of the amount of dividends received on this account.

9. The books and records of the depositor-corporation were destroyed upon termination of its bankruptcy proceedings. The petition by which it initiated these bankruptcy proceedings in 1935 read in part as follows: "That the assets of the said debtor * * * are as set forth in the Balance Sheet attached hereto and made a part hereof." This Balance Sheet listed an asset of the corporation as follows: "Cash in closed First National Bank, $662.52."

10. The account known as "Cash in closed First National Bank, $662.52," was not listed in the inventory and appraisal filed in said bankruptcy proceedings. The trustee in bankruptcy testified that among the assets of this bankrupt creamery business were a number of accounts receivable, none of which was listed in the inventory and appraisal of its assets.

11. There is no written evidence of the transaction of February 13, 1933, and no claim of a legal assignment to John Flood et al. of the account and claim against plaintiff-Receiver. Defendants John Flood et al. claim the transaction constituted them equitable assignees of the account and claim. The trustee in bankruptcy, the purchaser of the bankrupt-corporation's assets and the plaintiff-Receiver had no knowledge or notice until 1941 that defendants John Flood et al. claimed any interest in the account in question.

### Conclusions of Law.

1. This court has jurisdiction of this controversy as a case in connection with winding up the affairs of an insolvent national banking association. 28 U.S.C.A. § 41(16)

2. At most, the transaction in question amounted to a promise by the debtor-corporation to repay loans out of a specified fund, when collected by the corporation, and in Michigan this does not constitute a legal or equitable assignment. Grand Rapids Trust Co. v. Reliable Coal & Mining Co., 1927, 238 Mich. 248, 213 N.W. 100; Allardyce v. Hart, 1939, 291 Mich. 642, 289 N.W. 281; Gogebic Auto Co. v. County Board, 1940, 292 Mich. 536, 290 N.W. 898.

3. There having been no legal or equitable assignment of the bankrupt corporation's claim against plaintiff-Receiver, this claim constituted an asset of the bankrupt corporation at the date of trustees' sale and transfer of corporation assets to H. & W. Creamery Co., and passed to the latter by such sale and transfer.

4. The stockholders of a dissolved Michigan corporation are the beneficial owners of its undistributed assets. Pontiac Trust Co. v. Newell, 1934, 266 Mich. 490, 497, 254 N.W. 178.

5. Judgment shall be entered to the effect that defendants Emil Houtteman, Fred J. Warde and Patricia Cook, as sole stockholders of the dissolved H. & W. Creamery Company, are entitled to be paid the interpleaded fund.